UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

Eastern District of Kentucky
F I L E D
JAN 3 1 2007
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 06-169-GWU

LENA GARRISON,                                              PLAINTIFF,

VS:                         MEMORANDUM OPINION

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                            DEFENDANT,

## INTRODUCTION

Lena Garrison brought this action to obtain judicial review of an unfavorable administrative decision on her application for Disability Insurance Benefits. The case is before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has established the following test for judicial analysis of benefit denial cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 416.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I (Listing of Impairments)? If yes,

1

the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform his kind of past relevant work? If yes, the claimant is not disabled. If no, proceed to step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(I).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1985).

In applying this analysis, it must be remembered that the principles applicable to judicial review of administrative agency action apply. Judicial review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence and in deciding whether the Commissioner employed the proper criteria in reaching his conclusion; the findings as to any fact, if supported by substantial evidence, shall be conclusive. Id. This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion"; it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Id.

One of the factors in the administrative record may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742

2

F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).

Additional information regarding the specific steps of the seven-part Garner test cited earlier is also valuable.

In step three of the analysis, the issue is whether the plaintiff has a "severe impairment," defined by the regulations to mean one which significantly limits one's ability to perform basic work activities, which is in turn defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. 404.1521, 416.921. The Sixth Circuit has definitely cautioned against overly-restrictive interpretation of this term. Farris v. Secretary of Health and Human Services, 773 F.2d 85 (6th Cir. 1985). The burden is upon the plaintiff, however, to provide evidence complete and detailed enough to enable the Commissioner to determine that there is such a "severe impairment," Landsaw v. Secretary of Health and Human Services, 803 F.2d 211 (6th Cir. 1986).

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that she or he is unable to return to this work. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways that the Commissioner may meet his burden is through the use of the medical-vocational guidelines.

3

However, the medical vocational guidelines themselves may not even be fully applicable if a non-exertional impairment is involved. When this happens, the Commissioner may use the rules as a framework for decision-making. 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e). It may often be required for the agency to consult a vocational specialist in such cases. Damron v. Secretary, 778 F.2d 279 (6th Cir. 1985). Nonetheless, the finding by the Commissioner that a non-exertional impairment does not significantly affect the level of work that a claimant can do must be tantamount to a finding that this additional impairment is non-severe. Wages v. Secretary of Health and Human Services, 755 F.2d 495 (6th Cir. 1985).

One of the residual functional levels used in the guidelines, called "medium" level work, involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objections weighing up to twenty-five pounds; a person capable of this level of exertion is also deemed capable of performing at lesser levels of "light" and "sedentary." 20 C.F.R. 404.1567(c), 416.967(c). "Light" level work, involves the lifting of no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is in this category when it involves a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of work activity, must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b), 416.967(b). A "sedentary" level job encompasses the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a). The guidelines make it clear that disabilities such as postural restrictions or the lack of bilateral manual dexterity compromise a person's ability to do a full range

of this type of work; they also indicate that a finding of disabled is not precluded when the person is not able to do a full range of sedentary work, even if that person is a "younger individual." 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e), 201.00(h).

Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only "if the question accurately portrays (plaintiff's) individual physical and mental impairments." Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Garrison, a 52 year-old former hand packer with a high school equivalent education, suffered from impairments related to the residuals of being status post back surgery, degenerative disc disease of the cervical spine, and an affective disorder. (Tr. 427, 432). While the plaintiff was found to be unable to return to her past relevant work, the ALJ determined that she retained the residual functional capacity to perform a restricted range of light level work. (Tr. 436). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 436-437).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert Anne Thomas included an exertional restriction to light level work along such non-exertional restrictions as (1) an inability to perform overhead reaching with left arm; (2) an

5

inability to balance; (3) an inability to more than occasionally climb, stoop, bend, crouch, or crawl; (4) a limitation to object-focused rather than people-focused jobs; and (5) a limitation to simple and low level detailed tasks. (Tr. 419). In response, the witness identified a significant number of jobs which could still be done. (Tr. 419). Therefore, assuming that the vocational factors considered by Thomas fairly characterized Garrison's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

With regard to the framing of the physical factors of the hypothetical question, the undersigned finds no error. The hypothetical factors were essentially consistent with the physical restrictions identified by Dr. Robert Hoskins, an examining consultant, who opined that Garrison would be restricted to light level lifting and carrying as well as no more than occasionally bending, squatting, crawling, climbing or balancing.[1] (Tr. 224). Such treating and examining sources as the staff at the Knox Family Medical Center (Tr. 128-139), the staff at the Spine and Brain Neurological Center (Tr. 140-144), the staff at the Knox County Practice Clinic (Tr. 152-153, 204-205), Dr. Arden Acob (Tr. 154-176), the staff at Samaritan Hospital (Tr. 206-216), the staff at Knox County General Hospital (Tr. 217-220), Dr. Steven Kiefer (Tr. 309-314), and the staff at Memorial Hospital (Tr. 315-316) did not report the existence of more severe physical restrictions than those found by the ALJ. These reports provide substantial evidence to support the administrative decision.

Dr. Suzanne Dansereau, a treating physician at the Parkway Medical Clinic, reported the existence of more severe physical restrictions than those

---

[1] In a concluding paragraph, Dr. Hoskins actually precluded only <u>frequent</u> postural activities. (Tr. 224).

6

found by the ALJ.² (Tr. 346-348). The ALJ rejected Dr. Dansereau's opinion as binding because he did not believe that it was well-supported by objective medical data. (Tr. 429). This action would appear appropriate. In making her assessment as to the plaintiff's ability to walk and stand, the doctor relied upon subjective allegations of hip pain which the physician noted were not supported by radiographic evidence, which she had declined to obtain. (Tr. 347). The plaintiff upon intake indicated that she had no recent history of neck pain. (Tr. 332). Dr. Hoskins' physical examination revealed no atrophy or abnormal strength and tone in the neck, spine and extremities. (Tr. 223). Deep tendon reflexes were unremarkable. (Tr. 223). Therefore, the opinion of Dr. Dansereau was properly rejected. Moreover, the claimant has not objected to the ALJ's rejection of this opinion.

Doctors Timothy Gregg (Tr. 182), Humilidad Anzures (Tr. 257), James Ramsey (Tr. 285), the non-examining medical reviewers, all reported that Garrison would need to avoid concentrated exposure to vibration. This factor was not included in the hypothetical question. Dr. Hoskins, an examiner, did not report this as a restriction. The administrative regulations provide that "generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. 404.1527(d)(1). Thus, the ALJ could rely upon Dr. Hoskins in preference to the reviewers. Furthermore, the plaintiff has not asserted that this omission was legal error.

The ALJ also dealt properly with the evidence of record relating to Garrison's mental condition. Dr. Kevin Eggerman, an examining source, opined

---

²The doctor did not actually quantify the lifting, carrying, standing, walking, sitting, pushing, pulling, or environmental restrictions, she was imposing. (Tr. 346-349). Thus, it was not entirely clear that her opinion on these factors would contradict the ALJ's findings. Only postural activities were restricted to a specified level of performance.

7

that the plaintiff would be "mildly to moderately" limited in dealing with the public, supervisors and co-workers as well as "moderately" limited in responding to work pressures. (Tr. 231). The mental limitations of the hypothetical question were essentially compatible with these limitations. This opinion offsets that of Psychologist Pamela Starkey, another examiner. (Tr. 145-151). The question was also essentially consistent with the somewhat differently worded but not necessarily totally disabling mental limitations identified by Psychologists Thompson Prout (Tr. 186-187), Edward Ross (Tr. 234-235), and Edward Stodola (Tr. 262-263) which included "moderate" restrictions of ability to maintain attention and concentration for extended time periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances as well interacting appropriately with the general public. These reports provide substantial evidence to support the administrative decision.

Psychologist Vishmohr Arcadia, a treating source at the Cumberland River Comprehensive Care Center, reported the existence of extremely severe mental restrictions on an August, 2005 Medical Source Statement of Ability to do Work-Related Activities Form. (Tr. 318-321). The ALJ rejected this opinion as binding because he did not believe that it was consistent with the treatment notes at Cumberland River. (Tr. 432-433). As noted by the ALJ, the plaintiff's Global Assessment of Functioning (GAF) was rated as 65 as recently as June of 2005. (Tr. 354). Such a GAF rating suggests the existence of only "mild" psychological symptoms according to the American Psychiatric Association's _Diagnostic and Statistical Manual of Mental Disorders_ (4th Ed.-Revised, 1994). This opinion suggests that any later deterioration in the plaintiff's condition would not meet the

8

durational requirement.[3] When the claimant was last seen at Cumberland River in early August of 2005, she was noted to be alert, neat, friendly, cooperative, oriented, focused and attentive. (Tr. 350). She exhibited no abnormal psychomotor activity. (Tr. 350). Her memory was intact. (Tr. 350). Therefore, the ALJ could properly reject this opinion.

The ALJ failed to include mental restrictions in the residual functional capacity finding noted in his Findings. (Tr. 436). However, mental limitations were definitely included in the hypothetical question. (Tr. 419). These mental limitations have been found by the Court to have fairly depicted Garrison's condition. Therefore, any error on the part of the ALJ is harmless.

The undersigned concludes that the administrative decision should be affirmed. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff. A separate judgment and order will entered simultaneously consistent with this opinion.

This the ___31___ day of January, 2007.

*[signature]*
G. WIX UNTHANK
SENIOR JUDGE

---

[3] Garrison did report a situational problem that her sister died in June of 2005 and that she experienced feelings of guilt because she refused to loan her money. (Tr. 350).